[Crim. No. 4102. In Bank.—August 14, 1937.]

THE PEOPLE, Respondent, v. CHARLES McGUIRE, Appellant.

No appearance for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

CURTIS, J.—Defendant was charged with the murder of Max Krall by an information filed against him in the Superior Court of the County of Sacramento. He pleaded not guilty to the charge. A trial was had before a jury and resulted in a verdict of murder in the first degree. The jury by its verdict fixed no punishment for the crime. The court thereupon pronounced judgment of death upon defendant. No notice of appeal was given or filed by defendant from said judgment. The appeal is before us in pursuance of section 1239 of the Penal Code providing for an automatic appeal in all cases where judgment for death is rendered.

No brief has been filed on behalf of defendant. The attorney-general has not deemed it necessary to file a brief, but has presented to the court a statement setting forth the salient facts of the case. Upon an examination of the record, we find this statement of the attorney-general to be correct. The facts in the case are simple. The defendant with a companion, known only as George, on the evening of December 20, 1936, at about 6 o'clock, entered a storeroom situated at No. 1720 L Street in the City of Sacramento in which the deceased, Max Krall, and Mrs. Mina Hawky carried on the combined business of bakery, candy shop, and wine room. On entering this store, the defendant approached the cash register with a pistol in his hand. The cash register was on the counter and Mrs. Hawky was behind the counter and asked him what he wanted. The defendant made no answer to her question. Mrs. Hawky then called Mr. Krall, who was in the rear part of the store. In response to her call, Mr. Krall came into the front part of the store. The de-

fendant told Krall to hold up his hands. Krall put up his hands as directed. Thereupon some conversation took place between Krall and the defendant which Mrs. Hawky did not understand. Krall ran around a small counter in the room with the two men after him. Two shots were fired and Krall fell to the floor, and the defendant and his companion fled from the premises. Krall died within a few minutes after the shots were fired and two bullet wounds were found upon his dead body. One had entered the body of Krall slightly below and a little back of the left nipple and passed down through the body, and was found in the lower part of the abdomen. The other bullet entered posteriorly on the left side of the body between the eleventh and twelfth ribs and passed through the body, and came out just to the left of the umbilicus.

On the following day the defendant boarded an eastbound freight train at Elvas Junction only a few miles outside of the city of Sacramento. On this train he made the acquaintance of Maynard M. Berry, and the two traveled together until the defendant was arrested, as will be shown later. At Roseville, some twenty-five miles northeasterly from Sacramento the train stopped and the two men, defendant and Berry, went into a restaurant and ordered a light meal. While they were eating the same, and before they had finished the meal, the defendant picked up a newspaper, and started to read it. Whereupon he suddenly threw the paper down, and said to Berry, ''Let's get out of here.'' The two men then went back to the railroad and boarded either the same or another eastbound freight train. While they were traveling together on this train, the defendant took out a package wrapped in a cloth containing a loaded revolver with two empty shells and four loaded cartridges. At the suggestion of Berry, these were removed from the pistol and thrown away by the defendant. During the conversation regarding the pistol, the defendant told Berry he had shot a man with the pistol in a holdup. Upon the train arriving at Colfax, the two men again got off the train, and defendant threw the pistol away. While stopping at Colfax, Berry told a man standing at the depot of the incident related to him by the defendant of his killing a man in a holdup. Defendant and Berry again boarded the train. On reaching Gold Run, an officer named Stanley boarded the train, and arrested the

defendant and took him and Berry back to Sacramento. At Colfax they stopped and retrieved the pistol that defendant had thrown away. Defendant first denied to Stanley that he had killed a man, but later admitted that he had. After arriving at Sacramento he was taken in charge by the sheriff of the county of Sacramento. He was taken to the office of the district attorney, where he made a complete confession of the murder. His statement was taken down in shorthand and afterwards transcribed. At his trial the defendant took the stand and admitted the correctness of the transcribed statement except in a few minor and unimportant details. In a number of instances he stated that he did not remember answering certain questions contained in the statement. He did not deny the killing, but claimed that Krall grabbed him and that in the tussle over the possession of the pistol it was discharged accidentally. He could not explain, however, why it was discharged twice, or how it was that Krall was shot once in the back. He claimed that Krall was facing him at all times during the struggle for the pistol and when the two shots were fired. He admits that the two shots were fired in rapid succession and in point of time almost as one shot. The fact that Krall was shot in the back completely discredits defendant's testimony that the shots were both discharged while he and the deceased were having a face to face encounter, and corroborates the evidence of Mrs. Hawky that Krall first put up his hands and then turned and ran, and that defendant and his companion, George, ran after Krall and defendant shot him twice. Defendant admitted that he stole the pistol for the purpose of using it in a holdup. His only explanation for the shooting was that he had been drinking during the day and was hardly himself when he entered the L Street store and while attempting to stage the holdup which resulted in the death of one of the proprietors. But his evidence shows that he was sufficiently sober to plan the whole affair and with a reasonable degree of accuracy remember and relate the next day all that took place on that fatal evening. With this evidence before the jury, we are satisfied that it could not have rendered any other verdict than that which was returned.

We have searched the record for any error during the trial which prejudiced the defendant's case without finding any. The trial judge was careful and painstaking in his

conduct of the trial, and accorded to defendant every right to which he was entitled. With this record before us, there is no other course open to us but to approve the proceedings in the trial court.

The judgment is affirmed.

Seawell, J., Edmonds, J., Langdon, J., Nourse, J., *pro tem.,* and Shenk, J., concurred.